**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELVA NANDIA VALENCIA ZAFRA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Civil Action No. 21-20035 (GC) (RLS)<br><br>**OPINION** |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon two Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Defendants Sarah and Randy Downs move for judgment on all claims against them, and Defendant the United States of America separately moves for judgment on all claims against it. (ECF Nos. 52 & 53.) Plaintiff Melva Nandia Valencia Zafra opposed, and Defendants replied. (ECF Nos. 60-63.) The Court has carefully considered the parties' submissions, and it decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth herein, and other good cause shown, the Downs' motion is **GRANTED,** and the United States' motion is **DENIED**.

I.    **BACKGROUND**[1]

    A. PROCEDURAL BACKGROUND

This personal-injury action arises from a car crash that occurred on November 2, 2020. (ECF No. 1 ¶ 1.) Plaintiff Melva Nandia Valencia Zafra was injured when the car she was in was struck on Eastbound Interstate 195 near milepost 1.20, in Hamilton Township, New Jersey. (*Id.*) She alleges that her injuries are "severe, substantial and permanent." (*Id.* ¶ 2.)

About a year after the crash, on November 17, 2021, Plaintiff brought suit for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, against Defendants the United States of America and the United States Postal Service ("USPS") as well as for common-law negligence against Defendants Adrian Jensen, Sixto Otano, Rosa Diazayola, Sarah L. Downs, and Randy C. Downs. (*Id.* ¶¶ 20-59.)

On January 24, 2022, Defendants Sarah and Randy Downs answered the Complaint and asserted cross-claims for contribution. (ECF No. 7.) They then filed an amended answer to include the defense that Plaintiff may not have been wearing a seat belt. (ECF Nos. 23 & 26.) On March 9, Defendants Rosa Diazoyola and Sixto Otano answered and asserted cross-claims for contribution and indemnification. (ECF Nos. 12 & 13.) And on March 17, Defendants the United States of America, the United States Postal Service, and Adrian Jensen answered and asserted cross-claims for contribution and indemnification. (ECF No. 14.)

On June 7, 2022, the Court entered a stipulation dismissing "the claims . . . against defendants the United States Postal Service and Adrian Jensen" because "only the United States is a proper defendant" under the Federal Tort Claims Act. (ECF No. 20.) On November 16, 2022,

---

[1]    Citations to page numbers within record documents (*i.e.*, "ECF Nos.") typically refer to the page numbers stamped on the document by the Court's e-filing system. For citations to transcripts, however, the Court refers to the page and line numbers paginated by the reporter.

the Court granted Defendant Sixto Otano and Rosa Diazoyola permission to deposit the proceeds of their insurance policies with the Court. (ECF No. 34.)

In early September 2023, Defendants Sarah and Randy Downs as well as Defendant the United States of America moved for summary judgment. (ECF Nos. 52 & 53.) Plaintiff opposed, and Defendants replied. (ECF Nos. 60-63.)

### B. Undisputed Facts

On November 2, 2020, a three-car crash occurred at around 5:28 a.m. near milepost 1.20 on Eastbound I-195 in Hamilton Township. (DSMF & DRSMF ¶ 1; USMF & URSMF ¶ 1.[2]) At that point, I-195 merges from three lanes down to two lanes. (DSMF & DRSMF ¶ 3; USMF & URSMF ¶ 9.)

Plaintiff was a passenger in a 2012 Honda CR-V that was operated by Sixto Otano. (DSMF & DRSMF ¶ 2; USMF & URSMF ¶ 4.) The Honda was owned by Rosa Diazoyola. (USMF & URSMF ¶ 2.)

According to the police report, Mr. Otano "sped up and attempted to improperly pass" a USPS tractor-trailer operated by Adrian Jensen. (DSMF & DRSMF ¶ 3; USMF & URSMF ¶ 12.) After a collision with the postal truck, Mr. Otano's Honda entered a spin and struck the rear passenger side of a 2013 Nissan Sentra operated by Sarah Downs and owned by Randy Downs. (DSMF & DRSMF ¶¶ 3, 5; USMF & URSMF ¶ 12.) The Nissan had been ahead of both the postal truck and the Honda. (DSMF & DRSMF ¶ 11.)

---

[2]   The Statement of Undisputed Material Facts from Sarah and Randy Downs (ECF No. 52-3) is referred to as "DSMF," and Plaintiff's Response to their Statement of Material Facts (ECF No. 61-1) is referred to as "DRSMF." The Statement of Undisputed Material Facts from the United States of America (ECF No. 53-2) is referred to as "USMF," and Plaintiff's Response to its Statement of Material Facts (ECF No. 60-2) is referred to as "URSMF."

After the crash, Plaintiff was transported to a hospital for a lower leg injury. (USMF & URSMF ¶ 19.) In January 2021, she filed an administrative tort claim with the United States Postal Service, demanding five million dollars. (USMF & URSMF ¶ 25.) The claim was denied in January 2022. (USMF & URSMF ¶ 26.)

Mr. Otano was charged with careless driving in violation of N.J. Stat. Ann. § 39:4-97 and driving without a license in violation of N.J. Stat. Ann. § 39:3-10. (DSMF & DRSMF ¶ 4; USMF & URSMF ¶ 21.) Mr. Otano pleaded guilty on January 4, 2021, to the lesser charge of "obstructing the passage of other vehicles" in violation of N.J. Stat. Ann. § 39:4-67. (USMF & URSMF ¶ 22.)

## II.   LEGAL STANDARD

"Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011). Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

## III.   DISCUSSION

### A. SARAH AND RANDY DOWNS

Defendants Sarah and Randy Downs submit that they should be granted summary judgment because there is no evidence that they bear responsibility for the crash. (ECF No. 52-4.) They write:

> [T]he police report and the physical evidence from the scene along with all of the deposition testimony confirms that Ms. Downs' vehicle was travelling ahead of both Mr. Otano's vehicle and the US Postal Service tractor trailer and that her vehicle was struck in the passenger's side rear quarter panel *after* the initial impact had occurred between the Otano vehicle and the tractor trailer. She was hit as the result of the impact between the Otano vehicle and the tractor trailer, but she did nothing to cause or contribute to the happening of the accident.
>
> . . . .
>
> . . . There isn't even a hint of evidence that Ms. Downs was doing anything improper or unusual while driving that would create even the possibility that she was in some way responsible for this accident. In fact, neither Mr. Otano, Mr. Jensen, or the Plaintiff herself can point to any evidence that Ms. Downs played any role in the accident other than being a victim herself.

[(*Id.* at 7-8 (cleaned up).)]

And even if a claim of negligence could be maintained against Ms. Downs, Mr. Downs argues that it would fail against him because "he was not present at the time of the accident." (*Id.* at 11.) He writes that "[d]iscovery has confirmed that Sarah was using the car . . . [to] driv[e] to work," "she was not working as an 'agent' or 'employee' of her father," and "[t]he car was properly maintained." (*Id.* at 12)

In opposition, Plaintiff acknowledges that "[i]t is not contested that the two other vehicles involved in the accident came into contact with each other before . . . Mr. Otano's vehicle came into contact with Ms. Downs' vehicle." (ECF No. 61 at 5.) However, Plaintiff argues that "this does not preclude a finding that Ms. Downs was at least partially responsible for the accident" because New Jersey law recognizes that more than one defendant can be liable for causing injury. (*Id.* (citation omitted).) Although Plaintiff also admits that Ms. Downs did not "stop short" and

does not point to record evidence suggesting how Ms. Downs was in fact negligent,[3] Plaintiff claims that there is a discrepancy between "Ms. Downs' version of events—namely that she was in the left as opposed to the middle lane just before and during the accident—and the version of events depicted by the Police Report diagram" and that this inconsistency should be clarified "at the time of trial." (*Id.* at 4-7.) Plaintiff writes that "[w]hether Ms. Downs was driving in the left or middle lane is a significant issue" because "[i]f she were in the middle lane, the operation of her vehicle would have a more direct influence on the operation of the USPS truck, which . . . would be directly behind her." (*Id.* at 9.) Finally, Plaintiff argues that Mr. Downs "should be held liable under a theory of negligent entrustment." (*Id.* at 10.)

Under New Jersey law,[4] "[t]he fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *G.A.-H. v. K.G.G.*, 210 A.3d 907 (N.J. 2019) (quoting *Robinson v. Vivirito*, 86 A.3d 119 (N.J. 2014)). A plaintiff must ordinarily prove "defendant's negligence and that such negligence was the proximate cause of the plaintiff's injury." *Fernandes v. DAR Dev. Corp.*, 119 A.3d 878, 886 (N.J. 2015). Proximate cause is "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause,

---

[3] Plaintiff simply speculates that Ms. Downs may have been "traveling at too slow a rate of speed," but Plaintiff cites nothing in the record that comments on what speed Ms. Downs may have been traveling at or any suggestion that anyone believes her speed played a part in the crash. (ECF No. 61 at 10.) Plaintiff also did not submit her own supplemental statement to establish any facts in opposition. *See* L. Civ. R. 56.1(a) ("In addition, the opponent may also furnish a supplemental statement of disputed material facts . . . if necessary to substantiate the factual basis for opposition.").

[4] The parties do not dispute that New Jersey law applies to this common-law claim arising from an accident in New Jersey. *See Smith v. Gonzalez*, Civ. No. 16-2444, 2016 WL 8679226, at *2 (D.N.J. May 20, 2016) ("The actions leading to Plaintiff's claim occurred in Elizabeth, New Jersey, and therefore New Jersey's law applies here."); *see also McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207, 219 (N.J. 2017) ("Absent another state having a more significant relationship, the substantive law of the injury-site state applies.").

produces the result complained of and without which the result would not have occurred." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (quoting *Conklin v. Hannoch Weisman*, 678 A.2d 1060, 1071 (N.J. 1996)). "To act non-negligently is to take reasonable precautions to prevent the occurrence of foreseeable harm to others." *Fernandes*, 119 A.3d at 886 (quoting *Weinberg v. Dinger*, 524 A.2d 366, 374 (N.J. 1987)).

Here, Plaintiff has not pointed to evidence that creates a triable issue as to whether Ms. Downs' operation of the Nissan Sentra was negligent or as to whether any such negligence was a proximate cause of the collision that occurred on the morning of November 2, 2020. Instead, Plaintiff relies solely on speculation that Ms. Downs may have somehow contributed to the crash in some currently unknown way. This is insufficient to defeat summary judgment, particularly when the undisputed material facts and first-hand testimony all support the conclusion that—whether in the middle or left lane—Ms. Downs' Nissan Sentra played no role in causing the initial collision, and it was struck only after Mr. Otano's Honda collided with the postal truck and spun off. *See Lipski v. Vanselous*, Civ. No. 04-6009, 2006 WL 142728, at *4 (D.N.J. Jan. 19, 2006) ("Defendant['s] . . . argument that 'it is possible' Collincini's wheels were turned to the left is unavailing. . . . [H]e must present evidence demonstrating more than a mere 'metaphysical doubt as to material facts,' and he has failed to do so here." (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

Indeed, it is undisputed that Mr. Otano's Honda first collided with the postal truck, the Honda then bounced off and hit the Nissan in the rear passenger side panel, and the Nissan had been ahead of both the Honda and the postal truck. (DSMF & DRSMF ¶¶ 3, 10-11.) Further, the testimony of the relevant parties does not suggest that Ms. Downs bears any fault for either the initial collision between Mr. Otano's Honda and the postal truck or the subsequent collision that occurred with Ms. Downs. Mr. Otano, for example, blamed the postal truck for a "bad movement"

that sent him "bounc[ing]," and Mr. Otano testified that he had "no idea" how Ms. Downs "got involved," and he did not know if he had hit Ms. Downs or if the postal truck had.[5] (ECF No. 61-8 at 48:19-50:19, 56:20-58:16, 101:5-24.) Similarly, Mr. Jensen, the driver of the postal truck, blamed Mr. Otano's Honda for coming up on him fast, and Mr. Jensen testified that he could not recall any vehicle other than the Honda hitting his truck or being involved in the collision. (ECF No. 61-7 at 71:20-72:14, 92:22-25, 132:17-133:23.) And Ms. Downs testified that she saw Mr. Otano's Honda "speeding up to try and get in front of the truck," and then felt the impact of the Honda hitting her car. (ECF No. 61-5 at 18:21-22:21.) The police report also states that as the three lanes merged, Mr. Otano "sped up and attempted to improperly pass" the postal truck, causing a collision, and Mr. Otano then "entered a spin and struck" Ms. Downs. (ECF No. 61-4 at 3.)

Despite this consistent record as it relates to Ms. Downs' operation of the Nissan Sentra, Plaintiff contends that *Faccas v. Young* is "instructive," and that the negligence claim against Ms. Downs is sufficiently supported to survive summary judgment.[6] (ECF No. 61 at 5-9 (citing *Faccas v. Young*, 2015 WL 1721359 (N.J. Super. Ct. App. Div. Apr. 16, 2015)).) Not so. The circumstances in *Faccas* are very different than the circumstances in the present case. There, the

---

[5] Plaintiff testified that she did not see any other vehicles near her before the impact occurred and could not really remember what happened. (ECF No. 61-6 at 25:3-25.)

[6] Plaintiff also cites *Finley v. Wiley*, but that case involved an appeal of a jury verdict, and the Appellate Division found that the jury had erred in finding that the defendant was free of negligence when it had been raining, the roadway was "very slippery," and the defendant had "operat[ed] his car on a busy highway at the height of the rush hour in the fast lane at a speed which approached the maximum permitted." 246 A.2d 715, 718 (N.J. Super. Ct. App. Div. 1968). The Appellate Division also found that the issue of the plaintiff's contributory negligence was properly submitted to the jury when testimony claimed that the plaintiff was driving a tractor about ten to fifteen miles per hour in the slow lane. *Id.* at 720. The evidence on contributory negligence, "though scant, was sufficient," wrote the Appellate Division. *Id.* Here, there is no testimony or evidence that Ms. Downs was driving either too fast or too slow, or that this contributed to the collision, so *Finley* is inapplicable.

New Jersey Appellate Division found that it was an error for the trial court to rule, on summary judgment, that one of the motorists could not be liable for negligence when there was a genuine factual dispute—evidenced by conflicting testimony and an accident reconstruction report—as to whether the motorist in question failed to properly yield, negligently cut off another driver, and thereby caused that driver to become agitated prior to the accident. *Faccas*, 2015 WL 1721359, at *8-10. The court wrote that "a reasonable jury could conclude that if [the motorist] had been driving negligently, her alleged negligence was a substantial factor in causing the accident." *Id.* at *11. Here, in contrast, there is no testimony or competent evidence that suggests that Ms. Downs operated her vehicle negligently or that such negligence was the proximate cause of the crash. In fact, the drivers of the two other vehicles that first collided do not assign Ms. Downs fault for the collision or remember her being involved in what caused the collision. On this record, then, there is no basis for a reasonable jury to conclude that Ms. Downs was negligent or played a role in causing the accident. Judgment must therefore be entered in favor of Sarah and Randy Downs.[7] *See Matino v. Lasko*, 2013 WL 2172590, at *6 (N.J. Super. Ct. App. Div. May 21, 2013) ("Plaintiffs produced no competent evidence that [the defendant] failed to make proper observations, followed too closely, or drove at an excessive speed. We agree entirely with the trial court's determination that plaintiffs' proofs presented no genuine issue for trial.").

B. UNITED STATES OF AMERICA

Next, Defendant the United States of America argues that it is also entitled to summary judgment because "(1) the USPS driver acted reasonably and properly on the highway that

---

[7]  Because the Court finds that no claim of negligence can be maintained against Sarah Downs, no claim for negligent entrustment lies against Randy Downs. *See Quigley v. Arthur*, Civ. No. 10-4308, 2011 WL 5519839, at *2 (D.N.J. Nov. 10, 2011) ("In an action based on a theory of negligent entrustment, the plaintiff generally must prove that . . . (5) the harm to the injury victim was 'proximately' or 'legally' caused by the negligence of the entrustor and the entrustee." (citation omitted)).

morning; (2) nothing suggests that the United States or its employees caused the accident; and (3) the negligence of another defendant, Sixto Otano, caused the accident." (ECF No. 53-1 at 4.) The United States argues that the competent evidence shows that Mr. Jensen's conduct—*e.g.*, traveling in the center lane, not changing lanes, and checking his mirrors—"constituted an 'exercise of reasonable care' under the circumstances." (*Id.* at 9.) And it also submits that the competent evidence—*e.g.*, the police report, testimony of Mr. Jensen, and the United States' collision reconstruction report—shows that Mr. Otano improperly sped up to pass the postal truck, which caused the collision. (*Id.* at 11-12.)

In opposition, Plaintiff argues that the facts are not as clear as the United States submits and that there is a dispute regarding whether Mr. Jensen bears any liability for the accident in question. (ECF No. 60 at 2-3.) Plaintiff claims that Mr. Jensen's testimony is vague and that Mr. Otano's account of the collision suggests that Mr. Jensen "was negligent in failing to observe the traffic conditions around him prior to the collision." (*Id.* at 4-7.) Plaintiff discounts the value of the police report and the United States' expert report, and she insists that "a trier-of-fact is required here to weigh the reasonableness of the conflicting testimony." (*Id.* at 7.)

The Federal Tort Claims Act provides that when the United States is sued in tort it "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The statute also waives the federal government's sovereign immunity for personal injury claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "[S]tate law supplies '[t]he cause of action in an FTCA claim.'" *Wilson v. United States*, 79 F.4th 312, 317 (3d Cir. 2023) (quoting *CNA v. United States*, 535 F.3d 132, 141 (3d Cir. 2008)). And liability is determined by the law of the state where the tortious conduct occurred. *Igwemadu v. United States*, 2023 WL 33335, at *1 (3d Cir. Jan. 4,

2023). Thus, New Jersey law applies to Plaintiff's FTCA claim against the United States.

After careful review, the Court finds a genuine issue of material fact exists for a jury to determine the United States' liability, if any, for Mr. Jensen's alleged negligence in this case. Denying summary judgment is appropriate when it may be reasonably inferred from the circumstances that a defendant may have been negligent and that said negligence may have proximately caused the collision that resulted in injury. *See, e.g.*, *Morsey v. Erle*, 72 A.2d 303, 305 (N.J. 1950) ("A consideration of all the evidence clearly indicates a complex of circumstances from which legitimate inferences may be reasonably drawn that there was negligence on the part of the defendant which proximately caused the collision . . . . There was no error in the trial court's submission of the case to the jury."); *Transamerica Ins. Co. v. Keown*, 451 F. Supp. 397, 402 (D.N.J. 1978) ("Summary judgment in negligence cases is exceptional."); *see also* Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2729 (4th ed. Apr. 2023) ("Although a motion for summary judgment . . . may be made in any civil action, it is not commonly interposed, and even less frequently granted, in negligence actions. This is not surprising given the fact that particular deference has been accorded the jury in this class of cases in light of its supposedly unique competence in applying the reasonable person standard to a given fact situation.").

The critical issue is not simply whether Mr. Otano was negligent on the morning of November 2, 2020, and whether his negligence played a part in causing the collision that injured Plaintiff, but whether Mr. Jensen's alleged negligence could also be the proximate cause of the collision resulting in liability to Plaintiff. *See, e.g.*, *Brodsky v. Grinnell Haulers, Inc.*, 853 A.2d 940, 944 (N.J. 2004) ("In a case in which more than one defendant is found negligent, the trier of fact must then determine the amount of damages suffered by the plaintiff and each party's percentage of negligence." (citing N.J. Stat. Ann. § 2A:15-5.2a)); *Kubert v. Best*, 75 A.3d 1214, 1222 (N.J. Super. Ct. App. Div. 2013) ("[T]he law recognizes that more than one defendant can

be the proximate cause of and therefore liable for causing injury. . . . If more than one defendant breached his or her duty and proximately caused the injuries, the jury at a trial may determine relative fault and assign a percentage of responsibility to each under our comparative negligence statutes." (citations omitted)). On the current record, the Court cannot conclude, when viewing the facts in the light most favorable to Plaintiff, that no jury could reasonably find that Mr. Jensen had been driving negligently or that his alleged negligence was a substantial factor in causing the collision.

Here, neither Plaintiff nor Ms. Downs provide a clear picture of what occurred on November 2, 2020. Plaintiff did not witness what precipitated the collision but her recollection was that Mr. Otano had been driving "slow." (ECF No. 60-5 at 24:10-20.) And though Ms. Downs testified during her deposition that she "briefly noticed" Mr. Otano speeding up to pass the postal truck, she also testified that she did not recall seeing anything that seemed to show an accident about to take place, and she could not remember if Mr. Otano had succeeded in merging or whether Mr. Otano and Mr. Jensen had even made contact. (ECF No. 60-4 at 18:10-22:21.)

During his deposition, Mr. Jensen faulted Mr. Otano for the accident. Mr. Jensen testified that he had been driving between fifty-five to sixty-five miles per hour in the center lane and first saw Mr. Otano's headlights about "half a mile behind" and about a minute later "when [Mr. Jensen] came up to merge, [he] was checking [his] mirrors, and [he] couldn't find the headlights anymore." (ECF No. 60-6 at 71:20-72:8, 73:25-74:5, 77:13-18.) Mr. Jensen testified that he then checked each side of his mirrors and as he "turned [his] head back to the right, [he] saw a flicker; and instantly when [he] saw that flicker was the contact." (*Id.* at 72:8-14.)

And during Mr. Otano's deposition, he faulted Mr. Jensen for the accident. Mr. Otano testified that he had been driving about fifty-five miles per hour in the far-right lane and the postal truck made a "bad movement" and hit Mr. Otano's Honda "on the rear -- impacted [him] on the

rear." (ECF No. 60-7 at 46:21-47:16, 48:19-49:20.) Mr. Otano repeatedly testified that his belief was that Mr. Jensen had fallen asleep.[8] (*Id.* at 49:2-3, 51:9-15, 61:23-62:4, 84:7-12.)

There are thus competing narratives from those involved as to what occurred, who was or was not negligent, and whether Mr. Jensen bears any fault for the collision. Considering this testimony and deciding how much credibility to assign it is the province of the jury, not this Court. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *CareOne at Birchwood, LLC v. Twp. of Edison*, Civ. No. 22-7976, 2024 WL 1298902, at *7 (D.N.J. Mar. 27, 2024) ("[I]n deciding a party's summary judgment motion, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.").

The United States points to the New Jersey Police Crash Investigation Report, which found that Mr. Otano had "sped up and attempted to improperly pass" Mr. Jensen. (ECF No. 53-1 at 10-11.) Mr. Otano claims, however, that the responding officers did not obtain a statement from him at the scene of the accident, (ECF No. 60-7 at 89:22-25), and the police report is presumably based on the officers' interpretation of the subjective statements of those involved in the collision, not the first-hand observations of the officers, which lessens its independent value. *See, e.g., Watford v. S. Woods State Prison*, Civ. No. 19-5471, 2022 WL 2903338, at *7 (D.N.J. July 22, 2022) ("A police report . . . prepared in the context of an investigation and recounting subjective events in a

---

[8]   The United States emphasizes that Mr. Otano acknowledged under oath that he did not in fact see Mr. Jensen asleep at the wheel and was simply assuming that fact from the circumstances. (ECF No. 53-1 at 9; *see also* ECF No. 60-7 at 87:9-88:5.)

narrative form, is not a document that fits into any exception to the hearsay rule." (quoting *State v. Mosley*, 191, 179 A.3d 350, 363 (N.J. 2018))); *Almonte v. Ulloa Tineo*, 2017 WL 3400817, at *2 (N.J. Super. Ct. App. Div. Aug. 9, 2017) ("[Plaintiff] relied on a narrative contained in a police report as substantive evidence to support her claim of defendant's negligence. Without any testimony by the author of the report or the witnesses themselves, this narrative was inadmissible hearsay and the trial court misapplied its discretion in permitting its introduction as substantive evidence."). In any event, as noted above, it is for a jury to determine whether Mr. Jensen and/or Mr. Otano could be found liable under a theory of negligence.

The United States also relies on its own expert report that concludes that "[t]he cause of the . . . collision was the Honda attempting to improperly pass the tractor-trailer" to support a ruling of summary judgment in its favor. (ECF No. 53-5 at 17.) But the United States' report, prepared by Explico Engineering Company, relies largely on the police investigation report, deposition testimony, and photo images of the vehicles and the scene of the collision to draw its conclusion as to what occurred and who bears the fault. (*Id.* at 2-176.) Ultimately, while the export report shows that there is evidence in the record that could support a finding that Mr. Otano was negligent and his negligence was the sole proximate cause of the November 2, 2020 collision, the Court does not believe that the record before it rises to the level that would make this so "exceptional" a case as to warrant the Court taking the issue of the United States' alleged negligence from the jury as a matter of law. Although Plaintiff has not submitted a refuting expert report, a jury should determine how much weight to give the United States' expert's findings compared to the competing evidence. *See Bushman v. Halm*, 798 F.2d 651, 659 (3d Cir. 1986) ("[C]ircumstantial evidence or common knowledge may provide a sound basis from which a causal sequence may be inferred."); *Marks v. Mobil Oil Corp.*, 562 F. Supp. 759, 767 (E.D. Pa. 1983) ("The jury was free to weigh the competing expert and eyewitness testimony in determining

liability."); *Lebrio v. Pier Shops at Caesar's*, 2014 WL 4745411, at *8 (N.J. Super. Ct. App. Div. Sept. 25, 2014) ("[I]t was well within the jury's function to hear Dr. Dennis' opinion and to weigh its value, taking into consideration any inconsistencies defendant elicited on cross-examination.").

## IV.    CONCLUSION

For the reasons set forth above, and other good cause shown, Defendants Sarah and Randy Downs' Motion for Summary Judgment (ECF No. 52) is **GRANTED**, and Defendant the United States of America's Motion for Summary Judgment (ECF No. 53) is **DENIED**. An appropriate Order follows.

Dated:  April 30, 2024

_____
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE